UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 12-CV-3654 (JFB)(WDW)
_____

Tarik Ahmed, Timothy A. Lester, and Locust Valley Tobacco, Inc.,

Plaintiffs,

versus

Town of Oyster Bay, Frederick P. Ippolito, Diana S. Aquiar, and Joseph Ciambra,

Defendants.
_____

**MEMORANDUM AND ORDER**
March 18, 2014
_____

Joseph F. Bianco, District Judge:

Plaintiffs Tarik Ahmed ("Ahmed"), Timothy Lester ("Lester"), and Locust Valley Tobacco, Inc. ("Locust Valley Tobacco") (collectively, "plaintiffs") bring this action against defendants Town of Oyster Bay ("the Town"), Frederick Ippolito ("Ippolito"), Diana Aquiar ("Aquiar"), and Joseph Ciambra ("Ciambra") (collectively, "defendants"), alleging an unconstitutional deprivation of their property rights under the Fourteenth Amendment. Plaintiffs claim that defendants violated plaintiffs' procedural and substantive due process rights by shutting down their store in Locust Valley, New York, after uncovering alleged violations of the Town of Oyster Bay Town Code ("the Town Code").[1] Plaintiffs seek declaratory, compensatory, punitive, and equitable relief.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) plaintiffs had a meaningful post-deprivation remedy through an Article 78 proceeding in state court; (2) Lester lacks standing; and (3) plaintiffs had no entitlement or guaranteed right to continue operating their store in violation of the Town Code, and the complaint is devoid of any conscience-shocking allegations. For the following reasons, the Court grants the motion to dismiss the procedural due process claim and dismisses Lester for lack of standing, but denies the motion with respect to the substantive due process claim.

---

[1] Plaintiffs withdrew their Fourteenth Amendment Equal Protection Clause, municipal liability, and official capacity claims at oral argument. Accordingly, the Court dismisses those claims.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the complaint, documents incorporated by reference in the complaint, as well as documents filed in other proceedings or that are part of the public record. The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving parties.[2]

1. The Closure of Plaintiffs' Store

Ahmed is the President of Locust Valley Tobacco, a New York corporation, and Lester is an employee of Locust Valley Tobacco. (Amended Complaint ("AC") ¶ 2.) Plaintiffs own and operate a retail store in rented space at 99 Forest Avenue, Locust Valley, New York.[3] (*Id.*) Ippolito is the Commissioner of the Department of Planning and Development for the Town. (*Id.* ¶ 11.) Aquiar is Ippolito's assistant. (*Id.* 12.) Ciambra is a "Building Inspector" in the Department of Planning and Development. (*Id.* ¶ 13.)

Plaintiffs' store occupies a portion of the first floor of a building erected before 1940, when the Town first implemented a zoning code. (*Id.* ¶¶ 15, 18.) Under a grandfather clause in the zoning code pursuant to which any structure and use that lawfully existed before 1940 can continue to remain, exist, and be used, regardless of compliance with the current code, the building can have and be used as three retail stores on the first floor, three apartments on the second floor, and a cellar for storage. (*Id.* ¶¶ 16–17.) Plaintiffs sell items such as newspapers, magazines, lottery tickets, stationary, office supplies, pre-packaged snacks and sundries, and drinks. (*Id.* ¶ 20.) Defendants do not contend that plaintiffs' use of the premises as a retail store violates local law.[4]

In April 2012, Ahmed bought an electric griddle, a sandwich press device and hotdog roller, and several tables and chairs. (*Id.* ¶ 21.) Although he brought these items to the store, Ahmed never opened their packaging and left the tables and chairs stacked and unused. (*Id.* ¶ 22.) Nevertheless, at some time in April 2012, Ciambra entered and advised plaintiffs that they could not prepare food at the premises for sale and consumption there, because that would convert the store from a grandfathered retail store into a restaurant, in violation of the

---

[2] As discussed *infra*, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). Further, in analyzing the sufficiency of a complaint, a court need not accept as true pleadings "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 504–06 (S.D.N.Y. 2001) (citing *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971)).

[3] Defendants move to dismiss Lester because the complaint and plaintiffs' filings do not clarify whether he possesses an ownership interest in Locust Valley Tobacco. For instance, in Ahmed's Affidavit in Support of Order to Show Cause for Preliminary Injunction and Temporary Restraining Order ("Ahmed Affidavit"), dated August 2, 2012, he stated, "I own a retail store in Locust Valley, New York. This store had been in existence for many years prior to the time I purchased it less than one (1) year ago. I sell tobacco products such as cigarettes." (Ahmed Affidavit ¶ 3, Docket No. 2-1.) Ahmed never mentioned Lester, and plaintiffs' opposition does not respond to defendants' challenge to Lester's standing. (*See* Motion, at 2 n.1.)

[4] According to Ahmed, "these items were sold by the prior owner of the store, and the owner prior to him." (Ahmed Affidavit ¶ 3.) That fact is not in the AC.

current zoning code. (*Id.* ¶ 23.) Plaintiffs immediately removed the items from the premises. (*Id.* ¶ 24.)

On April 23, 2012, Ciambra issued a "Notice of Violation" and Summons. (*Id.* ¶ 26; Notice of Violation, Opposition Ex. A; Summons, Motion to Dismiss Ex. E.) The Notice of Violation stated that an inspection revealed an unsafe condition and construction without a permit. Ciambra wrote "Dangerous Condition" in the comments. The Notice of Violation apparently required plaintiffs to stop work, cease occupancy, and cease operations immediately. The Summons charged Ahmed with violations of the Town Code pertaining to zoning (§ 246-5.2), construction or alteration without a building permit (§ 93-15), dangerous structure constituting a public nuisance (§ 96-3), plumbing work without a permit (§ 180-22), electrical work without a permit or inspection (§ 107-13), and use of a structure without a proper Certificate of Occupancy (§ 93-30). Plaintiffs complied with the Notice of Violation and closed the store. (AC ¶ 27.)

On April 30, plaintiffs' counsel challenged the Notice, which he called a "Notice of Dangerous Building," for not complying with the Town Code. (*Id.* ¶ 28; Letter to Ippolito, Opposition Ex. 2.) On May 7, Aquiar responded and noted that a notice had not been issued:

> What makes it impossible for you to file a petition seeking review is that the Notice of Dangerous Building was never issued. If you remember, while this office was in the process of boarding up the illegal business you and I reached an agreement that your client, Locust Valley Tobacco, Inc., would continue the use of a card and stationary store **ONLY** and would not proceed with the sale of any food or drinks at this business.
>
> Inspections which have been performed each day by a Code Enforcement Official indicate that your client is not keeping our agreement.

(AC ¶ 29; Aquiar Letter to Sordi, Opposition Ex. 3.) Plaintiffs allege that, on that same day, Aquiar wrote to plaintiffs' landlord suggesting, contrary to the letter to plaintiffs' counsel, that Ippolito had declared the premises a dangerous building and public nuisance. (AC ¶ 30.) In particular, the letter alleges that (1) the occupancy details for the building in 1940 included a card and stationary store, one U.S. Post Office, and one office space; (2) the use of the store had been changed to a restaurant, making the premises subject to the provisions of the Town Code; (3) unlawful plumbing work and construction had been performed; (4) Ippolito had declared the premises a dangerous building and a public nuisance pursuant to § 96.2 of the Town Code; and (5) all business activity at the store had to cease and the premises returned to being a card/stationary store. (AC ¶ 30; Aquiar Letter to Landlord, Opposition Ex. 4.) It appears that plaintiffs reopened the store shortly after its closure on April 23, although it is unclear how long the store was closed.

The Town commenced criminal proceedings against plaintiffs in the Nassau County District Court in May 2012. (AC ¶ 31.) On July 17, 2012, Ippolito issued a "Notice of Dangerous Premises." (*Id.* ¶ 34; Notice of Dangerous Premises, Opposition Ex. 5.) According to the "Notice of Dangerous Premises," (1) plaintiffs had not corrected the violations at the premises; (2) pursuant to the emergency powers granted to Ippolito under § 96-20 of the Town Code,

the premises were deemed to "contain a dangerous condition; (3) the premises had to be secured, boarded, fenced, sealed, or otherwise made safe, with no entry permitted by any person without the consent of the Commission of Planning and Development; and (4) plaintiffs had seventy-two hours to commence the abatement of the dangerous conditions, or seven days to reject the emergency findings. The Notice did not say why the building was unsafe, and it did not require the full building to be vacated, only plaintiffs' store. Plaintiffs shut down their store on July 20, 2012.[5] (AC ¶¶ 44–45.)

### 2. Article 78 Proceeding

On July 30, 2012, plaintiffs requested a hearing before the Town Board to challenge the "Notice of Dangerous Premises." (AC ¶ 42; Verified Petition, Opposition Ex. 6.) The Town Board never scheduled or conducted any hearing. (AC ¶ 43.) The Town also never sought to enjoin plaintiffs' alleged activities through the criminal action in state court. (*Id.* ¶¶ 47–48.) Plaintiffs thus commenced a special proceeding in the Supreme Court of the State of the New York, seeking the vacatur of the "Notice of Dangerous Premises." (*Id.* ¶ 50.)

On August 22, 2012, Justice Winslow signed an Order to Show Cause that permitted plaintiffs to reopen the store. (*Id.* ¶ 51.) On August 24, defendants served another "Notice of Dangerous Premises" on plaintiffs. (Second Notice of Dangerous Premises, Opposition Ex. 7.) On August 28, while Justice Winslow was on vacation, defendants successfully moved to shut down the store before a different justice. (AC ¶ 52.) When Justice Winslow returned, plaintiffs sought judicial review of the Second Notice. (*Id.* ¶ 53.) After an evidentiary hearing from September 5–7, Justice Winslow signed an order permitting plaintiffs to reopen their store. (*Id.* ¶ 54.)[6]

On September 21, defendants sought permission to appeal Justice Winslow's

---

[5] The parties dispute whether the "Notice of Violation" was a "Notice of Dangerous Buildings." (*See* Def. Suppl. Reply, at 2; Pl. Suppl. Reply, at 2.) To the extent plaintiffs believe that this dispute has some legal significance with respect to whether there was a pre- and post-deprivation procedural due process violation, the Court disagrees. The Court need not resolve this dispute because, as discussed *infra*, the Court concludes that the procedural due process claim must be dismissed because of the Article 78 proceeding and plaintiffs' concession that the Town Code provisions are constitutionally adequate.

[6] According to plaintiffs, Ciambra testified, at the hearing, to the following: (1) he had never seen plaintiffs preparing or serving food; (2) no permits were required for the installation of electrical work if the work was inspected by an approved electrical inspection agency; (3) both a retail store and restaurant are permitted principal uses of the premises under existing law; (4) the refrigeration units located in the store did not require any permits; and (5) the only affirmative violation was the installation of the two sinks without a permit. (Opposition, at 6–7.) These facts are detailed in an affirmation by plaintiffs' counsel to the Appellate Division. (*See* Sordi Appellate Division Affidavit, Opposition Ex. 11). Plaintiffs' counsel also submitted an affidavit, previously submitted to Justice Winslow, stating that plaintiffs had taken steps to address the Town's concerns (whether required by the applicable law or not), including (1) corrective electrical work performed by a qualified electrician and inspected by the Town's representative, (2) the physical dismantling of two sinks, and (3) the removal of the exhaust hood, fan, and ductwork. (Sordi Affidavit to Justice Winslow ¶¶ 2–4, Motion to Dismiss Ex. F.) Although defendants do not specifically object to these facts, the Court cannot, and has not, considered this testimony on a motion to dismiss as to the truth of the matters asserted therein. It is well settled that the Court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citations omitted).

4

determination and to shut down plaintiffs' store. (AC ¶ 55.) Although the Second Department temporarily shut down the store, the panel unanimously denied permission to appeal and reinstated Justice Winslow's September 13 Order on October 11, 2012. (*Id.* ¶ 58) The Town dismissed the criminal charges on February 25, 2013. (*Id.* ¶ 59.) On April 23, 2013, defendants signed a stipulation that withdrew and/or vacated the Notices of Dangerous Premises, and discontinued the Article 78 proceedings as moot. (*Id.* ¶ 60; Article 78 Stipulation, Motion to Dismiss Ex. H.)

### B. Procedural Background

Plaintiffs filed their complaint on July 24, 2012. The Court stayed the proceedings on September 12, 2012, after plaintiffs commenced the Article 78 proceeding. After the Article 78 proceeding concluded, plaintiffs filed an amended complaint on June 24, 2013. Defendants moved to dismiss on August 26, 2013. Plaintiffs opposed on September 27, 2013, and defendants replied on October 11, 2013. The Court held oral argument on November 15, 2013. Defendants filed a supplemental reply on November 22, 2013, and plaintiffs responded on December 9, 2013.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

The Court notes that in adjudicating this motion, it may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or

possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

### III. DISCUSSION

Plaintiffs bring two claims pursuant to 42 U.S.C. § 1983: (1) a procedural due process claim under the Fourteenth Amendment; and (2) a substantive due process claim under the Fourteenth Amendment. Plaintiffs also bring a claim for arbitrary and capricious deprivation of property, which is similar to the Fourteenth Amendment claims. Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). As set forth below, the Court dismisses the procedural due process claim because it fails as a matter of law, and also dismisses the claims asserted by plaintiff Lester for lack of standing. The Court concludes, however, that Ahmed and Locust Valley Tobacco have adequately alleged a plausible substantive due process violation that survives a motion to dismiss.

### A. Procedural Due Process

Defendants move to dismiss the procedural due process claim because plaintiffs availed themselves of an adequate post-deprivation remedy: the Article 78 proceeding. Plaintiffs argue that the claim should not be dismissed, because defendants failed to follow procedures in the Town Code and the Article 78 proceeding could not address pre-deprivation violations or reward damages.

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). To establish a procedural due process violation, a plaintiff must prove that he or she was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378, (1971). The Supreme Court, however, distinguishes between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). On the one hand, where a plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.* (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). "Under those circumstances, 'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *Hellenic*, 101 F.3d at 880). In contrast, when a plaintiff brings a procedural due process claim "[b]ased on random

unauthorized acts by state employees," the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy.[7] *Id.* (citing *Hellenic*, 101 F.3d at 880; *Hudson*, 468 U.S. at 532).

As the Second Circuit has emphasized, "[t]his court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (internal quotations and citation omitted). Thus, regardless of whether plaintiffs have a protected property interest and although they plausibly allege that the Town did not follow the pre-deprivation procedures in the Town Code, plaintiffs' ability to force the reopening of their store shows that the procedures under Article 78 are more than adequate post-deprivation remedies for the purposes of due process. Further, unlike in cases where courts have denied motions to dismiss, plaintiffs do not claim that the Article 78 proceedings were inadequate, or that they were denied the opportunity to challenge the Notices of Dangerous Premises at the proceeding or on appeal, regardless of whether defendants' alleged failure to follow the Town Code deprived plaintiffs of their locally-provided due process rights.[8] *See, e.g.*, *Koncelik v. Town of E. Hampton*, 781 F. Supp. 152, 158 (E.D.N.Y. 1991) (denying motion to dismiss procedural due process claim in zoning case despite availability of Article 78 procedure because "although plaintiffs timely and successfully availed themselves of the Article 78 proceeding (as to the Planning Board claim), their plans to develop their property are still being delayed by the ZBA's and the Planning Board's pending appeal"); *Acorn Ponds v. Vill. of N. Hills*, 623 F. Supp. 688, 690–91 (E.D.N.Y. 1985) (denying motion to dismiss procedural due process claim related to zoning decision, despite fact that plaintiff was able to obtain orders in Article 78 proceeding, because such remedies were inadequate given the delay in obtaining the certificates of occupancy). In addition, plaintiffs concede that the Town Code provisions, in themselves, are constitutionally adequate. (*See* Opposition, at 10–11.) Therefore, their procedural due process claim is not based on the inadequacy of established state procedures. *See Rivera-Powell*, 470 F.3d at 465; *Hellenic*, 101 F.3d at 880–81.

Accordingly, the Court dismisses the procedural due process claim because the Article 78 proceeding precludes the claim as

---

[7] This differing treatment for "random, unauthorized acts" rests on "pragmatic considerations." *Hellenic*, 101 F.3d at 880 (citing *Hudson*, 468 U.S. at 532–33). When an arbitrary act by a low-level state employee causes a deprivation, "it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Velez v. Levy*, 401 F.3d 75, 92 (2d Cir. 2005) (quotations omitted). Thus, "[w]here a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984).

[8] Nothing indicates that the substantive issue during the Article 78 proceeding was defendants' failure to provide a pre-deprivation hearing, rather than the closure of the store itself. Plaintiffs' inability to seek compensatory damages during the proceeding therefore is irrelevant to the disposition of the procedural due process claim. *See Hellenic*, 101 F.3d at 882 ("If there *is* a constitutional violation, federal courts are available to hear § 1983 suits despite the availability of adequate state procedures. *Parratt*, *Hudson* and their progeny, however, emphasize that there *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." (internal citations omitted) (emphasis in original)).

a matter of law. *See Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 345 (E.D.N.Y. 2009) ("An Article 78 proceeding provides the opportunity to review whether a body or officer 'failed to perform a duty enjoined upon it by law' or whether a specific act was 'made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion,' and permits the state court to remedy the violation by ordering a hearing or a return of the unlawfully seized property." (quoting N.Y. C.P.L.R. 7803) (citing *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 156–57 (2d Cir. 2006))); *see also Pabon v. N.Y.C. Transit Auth.*, 703 F. Supp. 2d 188, 199 (E.D.N.Y. 2010) ("This Court is persuaded that the constitutionally sufficient remedies available to rectify any technical or procedural errors in the Transit Authority's robust grievance process, including resort to an Article 78 appeal proceeding, preclude a due process claim here.").

### B. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Instead, the scope of substantive due process is very limited. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has said that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Substantive due process is a means of "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "In order to establish a violation of a right to substantive due process, [after plaintiff demonstrates that it was denied a valid property interest,] a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena*, 432 F.3d at 112 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). To satisfy this standard, a plaintiff must show that the government decision it challenges "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989).

For the reasons set forth below, the Court dismisses Lester for lack of standing, but concludes that Ahmed and Locust Valley Tobacco have adequately stated a substantive due process claim under § 1983.

### a. Valid Property Interest

To meet the first prong of the test for substantive due process violations, plaintiffs must show they have a "valid property interest." *Cine SK8 v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)); *see also Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) ("To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest.").

### i. Lester's Standing

The Court begins with Lester's standing. Under Article III, standing to bring a lawsuit in federal court is limited to a plaintiff who "show[s] that the conduct of which he

8

complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *see also Ziemba v. Rell*, 409 F.3d 553, 555 (2d Cir. 2005). Among other standing requirements, "a plaintiff's alleged injury must be an invasion of a concrete and particularized legally protected interest." *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003) (opinion of Rehnquist, C.J., for a majority of the Court); *see also Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (requiring alleged injury to "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding" (citations and internal quotation marks omitted)).

Here, the Court must consider New York law to determine whether Lester has a protected property interest. *DeFalco v. Dechance*, 949 F. Supp. 2d 422, 430 (E.D.N.Y. 2013). "In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the . . . due process clause[,] a landowner must show a 'clear entitlement' to that benefit." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006)). A mere "abstract need or desire" for the benefit is insufficient. *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989) (citation omitted). The Court notes that it "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

As noted *supra*, defendants argue that Lester must be dismissed because he has no protected property interest. Plaintiffs have not addressed this issue in their opposition. The amended complaint alleges that Ahmed is the President of Locust Valley Tobacco and Lester is an employee. (AC ¶ 2.) An employee does not have a protected property interest in connection with the shutting down of the store for alleged violations of the Town Code. Although the Amended Complaint contains a conclusory allegation that plaintiffs "own and operate a retail store," that conclusory allegation (which may mean that Lester "operates" the store as an employee) is insufficient to plausibly allege or show the existence of a protected property interest by Lester.[9] Accordingly, the Court grants the motion to dismiss Lester for lack of standing.

ii. Property Interest

Defendants challenge whether plaintiffs have any entitlement or guaranteed right to operate their store in violation of the Town Code. (Motion to Dismiss, at 7.) They argue that the store qualified as a "dangerous premises" under the Town Code because of the following: (1) there were residential apartments immediately above the store; and (2) plaintiffs had not addressed the "overloading of the store's electrical system or the admittedly illegal plumbing connections," nor applied for a building permit to remove the exhaust hood and

---

[9] The Court notes that, in his affidavit in support of the Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order, Ahmed refers to himself as the owner of the retail store and makes no reference to Lester. (Ahmed Affidavit ¶ 3, Docket No. 2-1.) There is no affidavit or any other mention of Lester in the record.

9

ductwork run to the outside of the store. (Def. Suppl. Reply, at 2.) For the reasons set forth below, the Court cannot conclude, at the motion to dismiss stage, that any alleged Town Code violations vitiated Ahmed's and Locust Valley Tobacco's property interest. As discussed below, at the motion to dismiss stage, the Court must accept the allegations of the complaint as true, and here plaintiffs have asserted in great detail that there were no code violations that would warrant the shutting down of the store. Those allegations, at this stage, are sufficient to state a property interest for purposes of a substantive due process claim. To the extent that defendants seek to establish code violations based upon evidence that is outside the amended complaint (such as photographs of an exhaust hood submitted to defendants' motion papers), such evidence is properly considered at the summary judgment stage, not on a motion to dismiss.

"It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). A plaintiff has a "legitimate claim of entitlement" to a particular benefit if, "absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *RRI Realty Corp.*, 870 F.2d at 917 (citation and internal quotations omitted). An entitlement to a benefit arises "only when the discretion of the issuing agency is so narrowly circumscribed" as to virtually assure conferral of the benefit. *Id.* at 918.

As relevant here, "a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection." *33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 297 (N.D.N.Y. 2012) (citing *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 270 (E.D.N.Y. 2003)). However, a landowner's "vested right[] in a nonconforming structure existing at the time a prohibitory code is enacted, does not extend to subsequent construction." *Matter of Rembar v. Bd. of Appeals of Vill. of E. Hampton*, 539 N.Y.S.2d 81, 82–83 (N.Y. App. Div. 1989); *see also DeFalco*, 949 F. Supp. 2d 431–32 (citing cases).

Under the Town Code, a "dangerous building" is any building or structure in which, *inter alia*, (1) there exist "violations of any provision of any code or ordinance of the Town of Oyster Bay, such that the building becomes dangerous to life, safety, morals, or the general health and welfare of the occupants or people of the Town of Oyster Bay"; or (2) there is an electrical system which is defective, has an improper type of wiring for the purposes intended, or fails to meet ventilation requirements; or there are plumbing, sewage or drainage facilities that are not in conformity with applicable building and plumbing codes. Town Code § 96-2(8), (12). Further, the Code sets forth when the Commissioner, because of an emergency, may, *inter alia*, immediately seal a dangerous building:

> Any provision of this chapter to the contrary notwithstanding, where it reasonably appears that there is imminent danger to the life, health, safety, and/or welfare of any person unless a dangerous building or structure, as defined herein, is immediately sealed, boarded up, repaired, vacated or demolished, the Commissioner shall cause the immediate sealing, boarding up, fencing in, reparation, vacation and/or demolition of such dangerous building or structure.

Town Code § 96-20.

According to the amended complaint, plaintiffs never opened the griddle or sandwich press, nor did they use the chairs and tables. (AC ¶¶ 21–22.) Plaintiffs also immediately removed those items from the premises after Ciambra's first visit. (*Id.* ¶ 24.) Thus, such allegations cannot support defendants' contention that plaintiffs had lost their vested property right. With respect to the other modifications in the store, the plaintiffs allege that defendants made baseless accusations. (*Id.* ¶ 62.) They also allege that, although the store was called a "dangerous premises," Ippolito's July 17 letter did not state why the building was unsafe or require any other portion of the building to close.[10] (*Id.* ¶¶ 35–36.) Therefore, plaintiffs have a plausible claim that none of conditions at the store justified the store's designation as a "dangerous premises" under the Town Code and the shutting down of the store. In short, these allegations are sufficient to satisfy the "property interest" requirement of a substantive due process claim at the motion to dismiss stage.

b. Infringement of the Property Interest

In order to meet the second prong of a substantive due process claim, plaintiffs must show "that defendants infringed on [their] property right in an arbitrary or irrational manner." *Cine SK8*, 507 F.3d at 784. In particular, plaintiffs must show the government's infringement was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)); *see also Harlen Assocs.*, 273 F.3d at 505 ("As we have held numerous times, substantive due process 'does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit. . . . [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999))); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (explaining that plaintiff meets second prong of substantive due process test "only when government acts with no legitimate reason for its decision" (citation and quotation marks omitted)).

"In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992) (citations and quotation marks omitted); *see also Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 78 (D. Conn. 2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial 'is so outrageously arbitrary as to constitute a gross abuse of governmental authority'" (quoting *Natale*, 170 F.3d at 263)). For instance, in the context of a substantive due process claim against the Town of Colchester where zoning was at issue, the Second Circuit reversed a grant of summary

---

[10] To the extent defendants suggest that plaintiffs' concession that the sink was in violation of the Code automatically eliminates any property interest in the store's operation, or precludes a substantive process claim as a matter of law, the Court disagrees. Plaintiffs assert that any issues with the sinks were not sufficient to warrant the closing of the store under Town Code provisions. That allegation, combined with the other allegations in the pleading, is sufficient to survive a motion to dismiss on that issue.

judgment to the Town where, *inter alia*, it "had no authority under state law" to take certain actions with respect to plaintiffs' "protected property interest in the use of their property." *Brady v. Town of Colchester*, 863 F.2d 205, 215–16 (2d Cir. 1988). The Second Circuit explained that under these circumstances, a "trier of fact could conclude that there was no rational basis for the [Town's zoning board's] actions, and that, as a result, the [zoning board] violated appellants' rights to substantive due process." *Id.* at 216 (citation and quotation marks omitted).

Defendants argue that plaintiffs fail to allege any conduct that could plausibly satisfy this standard. The Court disagrees. For instance, plaintiffs allege that defendants unreasonably and arbitrarily instituted the criminal proceedings despite knowing plaintiffs had never used the food-related items they purchased and although plaintiffs immediately complied with the Notice of Violation. Plaintiffs also claim there was no justification for defendants' conclusion that any modifications were dangerous, and they point to, *inter alia*: (1) Aquiar's allegedly contradictory letters to plaintiffs' counsel and plaintiffs' landlord; (2) the fact that no other portion of the building was closed; and (3) the fact that defendants immediately issued the Second Notice of Dangerous Premises two days after Justice Winslow's initial ruling. Plaintiffs further contend that the Town arbitrarily disregarded the pre-deprivation procedures in the Town Code, without justification. Accepting plaintiffs' facts as true and construing them and the other facts in the record in the light most favorable to them, the Court concludes that plaintiffs have adequately stated a plausible claim for denial of their substantive due process based upon alleged conduct that was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised,'" *Ferran*, 471 F.3d at 369–70. *See, e.g.*, *Koncelik*, 781 F. Supp. at 158 (denying dismissal of procedural due process claim in zoning case where planning board decisions allegedly were, *inter alia*, arbitrary and capricious and in contravention of town code).[11]

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss. The Court dismisses the procedural due process claim because plaintiffs had an adequate post-deprivation remedy, and dismisses Lester for lack of standing. The Court denies the motion with respect to Ahmed's and Locust Valley Tobacco's substantive due process claim.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 18, 2014
      Central Islip, NY

\* \* \*

Plaintiffs are represented by Michael Sordi, PO Box 759, Northport, NY 11768. Defendants are represented by Christopher Kendric of Goldberg Segalla LLP, 200 Old Country Road, Suite 210, Mineola, NY 11501.

---

[11] To the extent defendants argue that plaintiffs should have sought damages during the Article 78 proceeding, the Court disagrees. The Article 78 proceeding is not a bar in this situation. *See Giano v. Flood*, 803 F.2d 769, 770–71 (2d Cir. 1986) (affirming holding that "it would be procedurally improper to interpose a civil rights claim for damages in an Article 78 proceeding," given that N.Y. C.P.L.R. 7806 only provides for damages "incidental to the primary relief sought," and therefore § 1983 claim was not barred by principles of *res judicata*).