UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TARIK AHMED, TIMOTHY A. LESTER,
and LOCUST VALLEY TOBACCO, INC.,

                              Plaintiffs,

    -against-

TOWN OF OYSTER BAY, FREDERICK P.
IPPOLITO, *Individually and in his official
capacity,* DIANA S. AQUIAR, *Individually
and in her official capacity,* and JOSEPH
CIAMBRA, *Individually and in his official
capacity,*

                             Defendants.
-----------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

12-CV-3654 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated July 24, 2012, later modified by an Amended
Complaint dated June 24, 2013, Plaintiffs Tarik Ahmed ("Ahmed"), Timothy A. Lester
("Lester"), and Locust Valley Tobacco, Inc. ("Locust Valley Tobacco") (collectively,
"Plaintiffs") commenced this action against the Town of Oyster Bay (the "Town"),
Frederick P. Ippolito ("Ippolito"), Diana S. Aquiar ("Aquiar"), and Joseph Ciambra
("Ciambra") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging an
unconstitutional deprivation of their property rights under the Fourteenth
Amendment.  *See* Complaint ("Compl."), Docket Entry ("DE") [1]; Amended
Complaint ("Am. Compl."), DE [18].  Presently before the Court, on referral from the
Honorable Joan M. Azrack for report and recommendation, is Defendants' Aquiar and
Ciambra motion for summary judgment ("Defendants' Motion" or "Def. Mot."), DE
[80], pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

Plaintiffs oppose Defendants' Motion. *See* Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Response" or "Pl. Resp."), DE [81]. For the reasons set forth herein, the Court respectfully recommends that Defendants' Motion be: (a) granted as to Aquiar; and (b) denied as to Ciambra.

## I.    Background

### A.    <u>Relevant Facts</u>

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements. Except where indicated, these facts are not in dispute.

#### 1. Closure of Plaintiffs' Store

Plaintiff Ahmed is the President of Plaintiff Locust Valley Tobacco, a New York corporation. *See* Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def. 56.1"), DE [80-1], ¶ 1. Plaintiff Lester is employed and works in Plaintiffs' retail store, operating in rented space at 99 Forest Avenue, Locust Valley, New York. *Id.* ¶¶ 1, 58; *see also* Def. Mot. Ex. A, ¶ 1 (Ahmed Affidavit in support of Order to Show Cause for Preliminary Injunction and Temporary Restraining Order ("Ahmed OTSC Aff.")) (attached to Defendants' Motion). The Town is located on western Long Island, New York. *See generally* Def. 56.1. Aquiar was the Assistant to the Commissioner of the Town's Department of Planning and Development, Ippolito (now deceased). *Id.* at ¶ 9. Ciambra is a "Building Inspector" for the Town's Department of Planning and Development. *Id.* at ¶ 10.

Plaintiffs' store occupies a portion of the first floor of a building erected before 1940, when the Town first implemented a zoning code.  *Id.* at ¶ 3; *see also* Joseph Ciambra Affidavit ("Ciambra Aff."), DE [80-3], ¶¶ 9, 24.  Under a grandfather clause in the zoning code, pursuant to which any structure and use that lawfully existed before 1940 can continue to exist, regardless of compliance with the current code, the building in which Plaintiffs' store is located, is designed to be used as three retail stores on the first floor, three apartments on the second floor, and a cellar for storage. *See id* at ¶¶ 3-4.  Prior to the events at issue, Plaintiffs sold items such as "cigarettes, cigars and tobacco, newspapers and magazines, lottery tickets, candy, gum, stationery, cards, prepackaged bottled sodas, water, juices, milk and prepackaged food items such as peanuts, cashews and other foodstuffs," and, according to Plaintiffs, coffee.  *See* Def. 56.1 ¶ 2; Plaintiffs' Counter-Statement Pursuant to Local Rule 56.1 and Response to Defendants' Rule 56.1 Statement ("Pl. 56.1"), DE [81], ¶ 1.

In April 2012, Ahmed, who "thought it would be a good idea to try to sell some foods that [he] would prepare on site, such as eggs in the morning, and hot dogs at lunch[,]" bought an electric griddle, a sandwich press device and hotdog roller, and several tables and chairs.  Def. 56.1 ¶¶ 6-7.  Although Ahmed brought these items to the store, he never opened their packaging and left the tables and chairs stacked and unused.  *Id.*  On or about April 13, 2012, the Town "received a telephone complaint from a man identifying himself as the tenant living above [Plaintiffs' store], advising that the owner was cooking in the store and expressed concerned about a lack of fire protection."  *Id.* at ¶ 8; *see also* Diana Aquiar Affidavit ('Aquiar Aff."), DE [80-4], ¶ 3.

3

In response, Aquiar assigned Ciambra to investigate.  Def. 56.1 ¶ 10; Aquiar Aff. ¶ 5; Ciambra Aff. ¶ 7.

On April 23, 2012, Ciambra entered Plaintiffs' store to conduct an inspection, and apparently observed it to be "in the process of being converted into a restaurant and convenience store with certain features similar to a 7-Eleven or delicatessen." Def. 56.1 ¶ 11; Ciambra Aff. ¶ 12.  During this inspection, Ciambra observed the following renovations, at various stages of progress:

1. A food service area had been constructed "[a]long one of the two side walls of the larger front room, with an electric griddle, an electric sandwich press, and a conveyor-type electric oven sitting on the countertop," all unopened;

2. "An overhead exhaust hood and fan had been installed," and the hood's ductwork "appeared to have been run to the outside through a window opening in the exterior brick wall of the building. Plywood covered this window opening and sealed the vent in place, preventing ingress/egress through that window";

3. "Dual sinks with hot and cold running water had been set into th[e] countertop area," refrigerator boxes below the counter, and a "self-serve coffee station" with "a small countertop refrigerator";

4. Along the wall opposite the food service area, "large, commercial refrigerated beverage display cases such as are commonly seen in delicatessens";

5. "Small café tables with chairs" had been brought inside and stacked along a wall;

6. "Electric smoothie/frozen drink machines were set up but – like the cooking equipment – were not being used at the time"; and

7. "At least two other existing windows in the smaller, rear room of the store – the greeting card section – had been

4

> blocked off by the erection of an interior partition wall, which "appeared to have been of wood sheathing construction, built up against these windows[,]" and "prevented ingress/egress through those windows if needed.

*See* Def. 56.1 ¶¶ 13-19; Ciambra Aff. ¶¶ 13-18, 20, 34; Def. Mot. Ex. C-J (photographs of Plaintiffs' store taken by Ciambra during his April 23 inspection, attached to Defendants' Motion).

After completing his inspection, Ciambra informed Ahmed that "if [Ahmed] had tables and chairs, and prepared food on the premises, [Ahmed] would be converting the store into a restaurant, a use that would not be permitted under the current zoning regulations due to the apartments above the store." Def. 56.1 ¶ 20; Ahmed OTSC Aff. ¶ 5. According to Plaintiffs, after Ciambra's inspection, they "immediately removed the aforesaid items from the store, in their new, unused condition, so as to avoid running afoul of any zoning laws." Pl. Resp. Ex. 8 ¶¶ 14-15. Ciambra disputes this contention. Def. 56.1 ¶¶ 44-45. In any event, Ciambra determined that, as a result of the already commenced renovations, Plaintiffs were in violation of multiple sections of the Town of Oyster Bay Town Code (the "Town Code") and issued a "Notice of Violation" and Summons to Plaintiffs on April 23, 2012. *Id. at* ¶¶ 21-30; Def. Mot. Ex. C (Ciambra's "Code Compliance Inspector's Report"); BB (the "Summons"); CC (the "Notice of Violation"). The Notice of Violation stated that an inspection revealed an unsafe condition and construction without a permit. *See* Def. Mot. Ex. CC. Ciambra wrote "Dangerous Condition" in the comments. *Id.*

The Notice of Violation required Plaintiffs to stop work, cease occupancy, and cease operations of the store immediately. *Id.* The Summons charged Ahmed with violations of the Town Code pertaining to: (a) zoning (§ 246-5.2); (b) construction or alteration without a building permit (§ 93-15); (c) dangerous structure constituting a public nuisance (§ 96-3); (d) plumbing work without a permit (§ 180-22); (e) electrical work without a permit or inspection (§ 107-13); and (f) use of a structure without a proper Certificate of Occupancy (§ 93-30). *See* Def. Mot. Ex. BB. Plaintiffs complied with the Notice of Violation and closed the store. *Id.*

On April 30, 2012, Plaintiffs' counsel challenged the Notice of Violation for not complying with the Town Code. *See* Pl. Resp. Ex. 3 (April 30, 2012 Letter from Sordi to Ippolito). On May 7, 2012, Aquiar (on behalf of Ippolito) responded to Plaintiffs' counsel, and informed him that the Notice of Dangerous Building had, apparently, never been issued:

> What makes it impossible for you to file a petition seeking review is that the Notice of Dangerous Building was never issued. If you remember, while this office was in the process of boarding up the illegal business you and I reached an agreement that your client, Locust Valley Tobacco, Inc., would continue the use of a card and stationary store **ONLY** and would not proceed with the sale of any food or drinks at this business.
>
> Inspections which have been performed each day by a Code Enforcement Official indicate that your client is not keeping our agreement.

Pl. Resp. Ex. 4 (May 7, 2012 Letter from Aquiar to Sordi); *see also* Defendants' Reply ("Def. Reply"), Ex. EE (Transcript of January 27, 2016 Deposition of Diana Aquiar ("Aquiar Dep.") at 32. On the same day, Aquiar wrote to Plaintiffs' landlord – Joseph

Acerra Realty LLC – stating, contrary to the letter to Plaintiffs' counsel, that Ippolito had declared the premises a dangerous building and public nuisance. *See* Pl. Resp. Ex. 5 (May 7, 2012 Letter from Aquiar to Joseph Acerra Realty LLC (the "Landlord Letter")); *see also* Aquiar Dep. at 33. The Landlord Letter stated that: the occupancy details for the building in 1940 included a card and stationary store, one U.S. Post Office, and one office space; the use of the store had been changed to a restaurant, making the premises subject to the provisions of the Town Code; unlawful plumbing work and construction had been performed; Ippolito had declared the premises a dangerous building and a public nuisance pursuant to § 96.2 of the Town Code; and all business activity at the store had to cease unless and until the premises returned to being a card/stationary store. *See* Landlord Letter.

It appears that Plaintiffs reopened the store shortly after its April 23 closure, and that Ciambra conducted follow-up investigations on April 30, 2012, May 1, 2012, May 2, 2012, and May 3, 2012, but did not observe that Plaintiffs had taken steps to correct the prior alleged violations. Def. Mot. Ex. P-V. On or about May 22, 2012, after Ciambra signed a criminal complaint, the Town commenced criminal proceedings against Plaintiffs in the Nassau County District Court, alleging that Plaintiffs had converted the premises from a retail store into a restaurant, in violation of the Town's Zoning and Building Codes. Def. 56.1 ¶ 64. Plaintiffs aver that Defendants "caused a criminal action to be commenced in the Nassau County District Court against the Plaintiffs," despite Defendants' "actual knowledge that Plaintiffs had never used any cooking equipment at the premises, and despite

actually knowing that Plaintiffs had actually removed any cooking equipment from the premises and all tables and chairs from the premises prior to any of the said cooking[.]" *See* Pl. 56.1 ¶ 13.

On July 17, 2012, Ippolito issued a "Notice of Dangerous Premises" to Plaintiffs. Def. 56.1 ¶ 48; Pl. Resp. Ex. 6 (the "Notice of Dangerous Premises"). According to the Notice of Dangerous Premises:

1. Plaintiffs had not corrected the violations at the premises;

2. Pursuant to the emergency powers granted to Ippolito under § 96-20 of the Town Code, the premises were deemed to "contain a dangerous condition";

3. The premises had to be secured, boarded, fenced, sealed, or otherwise made safe, with no entry permitted by any person without the consent of the Commission of Planning and Development; and

4. Plaintiffs had seventy-two hours to commence the abatement of the dangerous conditions, or seven days to reject the emergency findings.

*See* Notice of Dangerous Premises. The Notice of Dangerous Premises did not explain why the building was unsafe, and it did not require the full building to be vacated, only Plaintiffs' store. *Id.* Ciambra served this notice on July 20, 2012, and Plaintiffs shut their store down on that day. Def. 56.1 ¶ 49.

## 2. Article 78 Proceeding

On July 30, 2012, Plaintiffs requested a hearing before the Town Board of the Town of Oyster Bay (the "Town Board") to challenge the "Notice of Dangerous Premises." *See* Def. Mot. Ex. 7 (July 30, 2012 Verified Petition). As the Town Board never scheduled or conducted a hearing, and Defendants never sought to enjoin

Plaintiffs' activities through the criminal action in state court, Plaintiffs commenced an Article 78 proceeding in the Supreme Court of the State of the New York, seeking the vacatur of the "Notice of Dangerous Premises." *See* Def. Mot. Ex. 8 (August 16, 2012 Verified Petition). Plaintiffs' Article 78 proceeding "named only the Town and Ippolito as respondents. Aquiar and Ciambra were not named." Def. 56.1 ¶ 51. On August 22, 2012, Justice F. Dana Winslow entered an Order to Show Cause, which permitted plaintiffs to reopen the store. Def. Mot. Ex. 8-A (August 22, 2012 Order to Show Cause, signed by Justice Winslow). On August 24, 2012, Defendants served another "Notice of Dangerous Premises" on Plaintiffs. *See* Def. Mot. Ex. 9 (August 24, 2012 Notice of Dangerous Premises ("Second Notice of Dangerous Premises")).

On August 28, 2012, while Justice Winslow was on vacation, Defendants successfully moved – before a different judge – to shut down the store, resulting in an appeal by Plaintiffs to Justice Winslow and, upon his return, a multi-day evidentiary hearing. *See* Def. Mot. Ex. 11-A & 11-B (Transcripts of September 5-6, 2012 evidentiary hearing). At the conclusion of the evidentiary hearing, the Nassau County Supreme Court "directed Plaintiffs to cooperate with the Town's Building Inspector Gary Blanchard (now deceased) with respect to necessary electrical repairs and inspection, the disconnection of supply and drain lines from the two sinks, and the removal of the exhaust hood, fan and ductwork." Def. 56.1 ¶ 52. Once Plaintiffs satisfied those requirements, the state court permitted Plaintiffs' store to re-open, and it has been operating "without renewed code enforcement" since October 2012. *See* Def. 56.1 ¶¶ 53-54. On or about February 25, 2013, all criminal charges

previously brought against Plaintiffs – related to the code violations – were subsequently "voluntarily withdrawn." Def. 56.1 ¶ 55. On April 23, 2013, the parties signed a stipulation whereby Defendants withdrew and/or vacated the Notices of Dangerous Premises, and Plaintiffs discontinued the Article 78 proceedings as moot. *See* DE [21-9] (Signed Stipulation dismissing Plaintiffs' Article 78 Action, attached to Defendants' August 26, 2013 Motion to Dismiss).

**B.   Procedural History**

Plaintiffs commenced this action against Defendants on July 24, 2012. *See* Compl. The Complaint and Amended Complaint – seeking declaratory, compensatory, punitive, and equitable relief – allege that Defendants' actions in shutting down Plaintiffs' store after uncovering alleged violations of the Town Code, violated Plaintiffs' procedural and substantive due process rights, equal protection rights, and constituted an unconstitutional deprivation of their property rights under the Fourteenth Amendment.

On September 12, 2012, after Plaintiffs commenced their Article 78 action, then-District Judge Joseph F. Bianco stayed proceedings in this matter. *See* Electronic Order dated September 12, 2012. On June 24, 2013, after the conclusion of the Article 78 action, Plaintiffs filed their Amended Complaint. *See* Am. Compl. On August 26, 2013, Defendants filed a pre-answer motion to dismiss, *see* DE [21], which Judge Bianco granted in part and denied in part on March 18, 2014. *See* DE [30]. By his Order, Judge Bianco: (1) dismissed Plaintiffs' procedural due process claims because Plaintiffs were afforded "an adequate post-deprivation remedy"

10

through the Article 78 proceeding; (2) dismissed Lester for lack of standing; (3) dismissed Plaintiffs' previously withdrawn claims (Fourteenth Amendment Equal Protection, municipal liability, and official capacity claims against Ippolito, Aquiar, and Ciambra); and (4) denied the motion to dismiss with respect to Plaintiffs' substantive due process claims. *See id.* After Judge Bianco's opinion, only two of Plaintiffs' causes of action for violation of Plaintiffs' substantive due process rights, and for "arbitrary and capricious deprivation of property" remained *See id.* In his opinion, Judge Bianco found that Plaintiffs' "claim for arbitrary and capricious deprivation of property…is similar to the Fourteenth Amendment claims[,]" and treated the two as a single cause of action. *See id.* at 6.

Defendants filed their Answer to the Amended Complaint on April 16, 2014. *See* DE [31]. Discovery followed. On January 16, 2015, the case was reassigned from Judge Bianco to District Judge Joan M. Azrack. *See* Electronic Order dated January 16, 2015. Ippolito died in June 2017, and leave to substitute his Estate was denied. *See* DEs [58], [69]. On September 2, 2020, Judge Azrack prospectively referred Defendants' Motion to this Court for report and recommendation. *See* Electronic Order dated September 2, 2020. On December 22, 2020, Defendants filed Defendants' Motion, which Plaintiffs oppose. *See* Def. Mot.; Pl. Resp.; Defendants' Reply Memorandum Further in Support of their Motion for Summary Judgment ("Def. Opp."), DE [82].

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered

12

'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at \*6 n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## III.    LEGAL STANDARD FOR 42 U.S.C. § 1983 CLAIMS

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state[-]law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also*

*Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

## IV.   PLAINTIFFS' SUBSTANTIVE DUE PROCESS VIOLATION CLAIM

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendants' Motion, as to the substantive due process cause of action, be:  (a) granted as to Aquiar; and (b) denied as to Ciambra.

Substantive due process "is the right to be free of arbitrary government action that infringes [upon] a protected right." *Khalil v. City of New York*, No. 17-cv-1729, 2018 WL 4658803, at *7 (E.D.N.Y. June 11, 2018) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6 (2d Cir. 2005)).  To prevail on a substantive due process cause of action, a plaintiff must establish that the defendant infringed on a protected liberty interest in an arbitrary or irrational manner that "shocks the conscience." *See Lamothe v. Town of Oyster Bay*, No. 08-cv-2078, 2012 WL 6720781, at *12 (E.D.N.Y. Dec. 27, 2012) (citing *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010)) ("Such abuse occurs only where the government action challenged is so outrageous and arbitrary that it 'shocks the conscious' or suggests a 'gross abuse of governmental authority.'"); *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("[A] plaintiff must demonstrate [...] that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"); *Burroughs v. Cnty. of Nassau*, No. 13-cv-6784, 2014 WL 2587580, at *11 (E.D.N.Y. Jun. 9, 2014).  Accordingly, the Court must evaluate the evidence to determine: (1) whether Plaintiffs maintained an established

property interest in operating their store; and (2) whether Defendants' actions meet the applicable "shock the conscience" standard.

### A. **Plaintiffs' Vested Property Interest Rights**

Initially, Defendants contend that, at the time of the events at issue, Plaintiffs lacked a "clearly established" constitutional right to continue operating the store in violation of the Town Code as a matter of law. *See* Def. Mem. at 19. The Court disagrees.

To satisfy the first prong of a substantive due process analysis, the party alleging a violation must demonstrate a "valid property interest" in a benefit that was entitled to constitutional protection." *Lamothe*, 2012 WL 6720781, at *31-32 (citing *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir. 1995)); *see also West Farms Assoc. v. State Traffic Com.*, 951 F.2d 469, 472 (2d Cir. 1991) ("[A] plaintiff may not successfully claim a deprivation of property without due process absent the identification of a protected property interest."). "A plaintiff has a 'legitimate claim of entitlement' to a particular benefit if, 'absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted.'" *RRI Realty Corp. v. Inc. Vill. of Southampton,* 870 F.2d 911, 917 (2d Cir. 1989) (internal citations omitted).

Whether a protectable property interest exists is a question of state law. *See 33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 297 (N.D.N.Y. 2012) (citing *Gavlak v. Town of Somers,* No. 3:02-cv-1410, 2005 WL 1828750, at *3 (D. Conn. 2005) (a nonconforming use is a vested property right in the state of Connecticut)).

15

Under New York law, a nonconforming property use that predates the enactment of a restrictive zoning ordinance is considered a vested right entitled to constitutional protection. *See Levin v. Frank*, No. 3:18-cv-1292, 2019 WL 1754216, at *7 (N.D.N.Y. April 19, 2019) (citing *Norton v. Town of Islip,* 239 F. Supp. 2d 264, 270 (E.D.N.Y. 2003); *Town of Somers v. Camarco,* 308 N.Y. 537, 541, 127 N.E.2d 327, 328-9 (1955)); *see also Keller v. Haller,* 226 A.D.2d 639, 640, 641 N.Y.S.2d 380, 381 (2d Dep't 1996). On the other hand, a landowner's "vested right[] in a nonconforming structure existing at the time a prohibitory code is enacted, does not extend to subsequent construction." *See DeFalco v. Dechance*, 949 F. Supp. 2d 422, 427 (E.D.N.Y. 2013) (citing *Matter of Rembar v. Bd. of Appeals of Vill. of E. Hampton*, 148 A.D.2d 619, 620, 539 N.Y.S.2d 81, 82-3 (2d Dep't 1989)).

Under the Town Code, a "dangerous building" is any building or structure in which: (1) there exist "violations of any provision of any code or ordinance of the Town of Oyster Bay, such that the building becomes dangerous to life, safety, morals, or the general health and welfare of the occupants or people of the Town of Oyster Bay"; or (2) there is an electrical system which is defective, has an improper type of wiring for the purposes intended, or fails to meet ventilation requirements; or there are plumbing, sewage or drainage facilities that are not in conformity with applicable building and plumbing codes. *See* Town Code § 96-2(8), (12).

Further, the Code sets forth when the Town's Commissioner of the Department of Planning and Development may, because of an emergency, immediately seal a dangerous building:

16

> Any provision of this chapter to the contrary notwithstanding, where it reasonably appears that there is imminent danger to the life, health, safety, and/or welfare of any person unless a dangerous building or structure, as defined herein, is immediately sealed, boarded up, repaired, vacated or demolished, the Commissioner shall cause the immediate sealing, boarding up, fencing in, reparation, vacation and/or demolition of such dangerous building or structure.

Town Code § 96-20. Here, it is undisputed that: (1) Plaintiffs' store occupies a portion of the first floor of a building erected before 1940, when the Town first implemented a zoning code; (2) that "[t]he building itself was a legal, pre-existing, nonconforming <u>structure</u>"; and (3) [p]rovided the store would continue to be <u>used</u> as a retail store, the grandfathered use would continue[.]" *See* Def. 56.1 ¶¶ 3, 9, 24-25 (emphasis in original); Ciambra Aff. ¶¶ 3-4, 9, 24-25. These undisputed facts, by themselves, undermine Defendants' contention that Plaintiffs never had a vested property right in the store.

Nevertheless, the parties disagree as to whether the alterations that Plaintiffs began, but did not finish, permanently converted Plaintiffs' use of the store from a permitted grandfathered "retail store" to a non-grandfathered "restaurant" or other food service establishment sufficient to warrant closure. *See* Def. Mem. at; 19; Pl. Resp. at 9-10. Each party submits evidence to support its position, illustrating the issue of material fact inherent in the parties' disagreement. Indeed, while it is undisputed that Plaintiffs neither opened the griddle or sandwich press that Ahmed purchased, nor use the chairs and tables, *see* Def. 56.1 ¶¶ 6-7, Defendants submit evidence of Plaintiffs' addition of an overhead exhaust hood and fan, as well as the

17

installation of "[d]ual sinks with hot and cold running water [that] had been set into th[e] countertop area," to demonstrate that Plaintiffs were converting the premises from a retail store to a restaurant, thereby negating Plaintiffs' grandfathered structural non-conformance. Def. 56.1 ¶¶ 13-19; Ciambra Aff. ¶¶ 13-18, 20, 34; Def. Mot. Ex. C-J.

The totality of the evidence establishes an issue of material fact as to whether Plaintiffs' actions voided their previously recognized vested property interest in operating their store. Accordingly, the Court respectfully recommends that Defendants' motion for summary judgment as to the "property interest" requirement of Plaintiffs' substantive due process claim be denied. Notwithstanding the Court's recommendation as to the first prong of the substantive due process analysis, however, the Court still evaluates whether the actions taken by Aquiar and Ciambra leading up to the initial closing of Plaintiffs' store satisfy the objective "shock the conscience" prong of the substantive due process analysis.

## B. **Defendants' Alleged Infringement of Plaintiffs' Vested Property Interest Rights**

Defendants next argue that, even if Plaintiffs possessed a vested property interest in operating the store, "[t]he photographic, documentary and testimonial evidence in this case overwhelmingly demonstrates there was nothing irrational or arbitrary about the actions taken by Ciambra or Aquiar." Def. Mem. at 20. Alternatively, Defendants contend that both Aquiar and Ciambra are protected by qualified immunity because "[i]t would not be objectively apparent to a reasonable

officer in [Aquiar or Ciambra's] position that any aspect of [their] conduct was unlawful[.]" *Id.* at 17.

To satisfy the second prong of a substantive due process claim, a plaintiff must establish that the defendant's actions infringed on the plaintiff's property rights "in an arbitrary or irrational manner." *Royal Crown Day Care LLC v. Department of Health and Mental Hygiene of City of New York*, 746 F.3d 538, 545 (2d Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)); *see also 49 WB, LLC v. Village of Haverstraw*, 511 Fed App'x 33, 34 (2d Cir. 2013).  In the § 1983 context, "[t]he shock the conscience standard is not easily met; the plaintiff must show the government conduct was egregious and outrageous, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)) (internal quotation marks omitted); *see also 49 WB, LLC*, 511 Fed App'x at 35 (quoting *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir. 1999)) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary and outrageous.'"); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) (noting that malicious and sadistic abuses of government power which are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (explaining that a plaintiff meets second prong of substantive due process test "only when government acts with no legitimate reason for its decision" (citation and

19

quotation marks omitted)).  Thus, to satisfy the "shock the conscience" prong of a substantive due process claim, Plaintiff must provide evidence that Defendants "so grossly abused their authority that they deprived [Ahmed] of a constitutionally protected property interest."  *Gause v. Suffolk County Police, First Precinct*, No. 17-cv-2543, 2017 WL 3098097, at *5 (E.D.N.Y. July 20, 2017) (quoting *Rackley v. City of New York*, 186 F. Supp. 2d 466, 479 (S.D.N.Y. 2002)).

"In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational.  Government regulation of a landowner's use of his property is deemed arbitrary… only when government acts with no legitimate reason for its decision." *Gregory v. Incorporated Village of Centre Island*, No. 14-cv-2889, 2016 WL 4033171, at *5 (E.D.N.Y. July 27, 2016) (quoting *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992)) (internal quotation marks omitted); *see also Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 78 (D. Conn. 2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial 'is so outrageously arbitrary as to constitute a gross abuse of governmental authority'" (quoting *Natale*, 170 F.3d at 263)).

For example, in reversing a grant of summary judgment to the Town of Colchester where the town "had no authority under state law" to take certain actions with respect to plaintiffs' "protected property interest in the use of their property[,]" the Second Circuit explained that, under such circumstances, a "trier of fact could conclude that there was no rational basis for the [Town's zoning board's] actions, and

that, as a result, the [zoning board] violated appellants' rights to substantive due process." *Brady v. Town of Colchester*, 863 F.2d 205, 215-16 (2d Cir. 1988) (internal citation and quotation marks omitted).

Applying these standards, the Court finds that there is insufficient evidence to support Plaintiffs' claim against Aquiar, which is based on her sending allegedly inconsistent letters to Plaintiffs' counsel and landlord's counsel on May 7, 2012. Aquiar's January 27, 2016 deposition testimony, which is the only evidence submitted concerning why she sent the conflicting letters, demonstrates that none of her actions were so outrageous or arbitrary as to constitute an abuse of governmental authority.

> Q: Can you tell me why you would send a letter to the landlord of the plaintiff indicating that the premises had been declared a dangerous building on the very same day that you sent a letter to me indicating that there had never -- that there had not been issued a declaration of dangerous building?
>
> [...]
>
> A: It seems probably that this letter, the letter marked number 2, was sent first, earlier in that day, and then, because for whatever reason, the actual notice of dangerous building was sent out.
>
> Q: I'm sorry. Run that through again because I –
>
> A: When Exhibit Number 2 was dictated –
>
> Q: Exhibit Number 2. The letter to me?
>
> A: Dated May 7.
>
> Q: Correct.

> A: When this letter was done earlier in the day, the notice had not been issued yet and later in the day it was, so they both have the same date.

Aquiar Dep. at 35-36.

Essentially, the only evidence before the Court is that both letters sent by Aquiar were accurate at the time each was sent. As such, this evidence does not "shock the conscience" so as to support an alleged violation of Plaintiffs' substantive due process rights. Accordingly, the Court respectfully recommends that Aquiar be granted summary judgment as to this claim, and that she be dismissed from the case.

As to Ciambra, the evidence before the Court demonstrates multiple issues of material fact as to whether Ciambra's actions leading to the initial and subsequent closures of Plaintiffs' store were so egregious as to "shock the conscience," thereby satisfying the second prong of Plaintiffs' substantive due process cause of action against him. Initially, the parties do not dispute that: (1) Ciambra visited Plaintiffs' store on April 23, 2012 to conduct an inspection, and apparently observed Plaintiffs to be in early stages of converting the store into a restaurant, *see* Def. 56.1 ¶¶ 11, 13-19; Ciambra Aff. ¶¶ 12-18, 20, 34; Def. Mot. Ex. C-J; and (2) that Ciambra informed Ahmed that "if [Ahmed] had tables and chairs, and prepared food on the premises, [Ahmed] would be converting the store into a restaurant, a use that would not be permitted under the current zoning regulations due to the apartments above the store." *See* Def. 56.1 ¶ 20; Ahmed OTSC Aff. ¶ 5. Further, while the parties disagree as to whether the wrapped food preparation equipment originally photographed by Ciambra was removed from the premises by Plaintiffs, *see* Def. 56.1 ¶¶ 44-45; Pl.

22

Resp. Ex. 8 ¶¶ 14-15, the parties agree that, after a second inspection subsequently conducted by Ciambra, in which he observed that the chairs and tables had been removed but the exhaust hood remained, Plaintiffs were issued the Notice of Violation.  The Notice of Violation charged Plaintiffs with violations of the Town Code pertaining to zoning (§ 246-5.2), construction or alteration without a building permit (§ 93-15), dangerous structure constituting a public nuisance (§ 96-3), plumbing work without a permit (§ 180-22), electrical work without a permit or inspection (§ 107-13), and use of a structure without a proper Certificate of Occupancy (§ 93-30).  *See* Def. Mot. Ex. BB.  Plaintiffs complied with the Notice of Violation and closed the store. *Id.*  On or about May 22, 2012, after Ciambra signed a criminal complaint, the Town commenced criminal proceedings against Plaintiffs in the Nassau County District Court, alleging that Plaintiffs had converted the premises into a restaurant, in violation of the Town's Zoning and Building Codes.  *See* Pl. Resp. Ex. 11A at 10; Def. 56.1 ¶ 64.

Ciambra's testimony during the ensuing Article 78 proceedings, however, cast doubt on the reasoning behind his enforcement actions against Plaintiffs.  Notably, Ciambra admitted that he did not – although *required* by the Town Code in order to support a claim that the building had been illegally converted into a restaurant – directly observe, during any of his multiple inspections of Plaintiffs' store:  (1) any food being prepared, served, or consumed on the premises, *see* Pl. Resp. Ex. 11A at 39; (2) any "tables where waiters or waitresses were serving patrons[,]" *see id.*; or (3) that Plaintiffs had made any "structural changes" or "enlargements" to the premises,

*see id.* at 42.  Further, Ciambra admitted that, although part of the allegations against Plaintiffs were that the store lacked a legally required certificate of occupancy, because the building from which Plaintiffs operated was erected prior to 1940, such a certificate was not legally required.  *See id.* at 39-50.

Despite his admitted lack of knowledge on these subjects, however, Ciambra *still* issued the Notice of Violation to Plaintiffs, and signed the criminal complaint subsequently filed against them by the Town.  *See id.* at 10.  Such conduct is sufficient activity to satisfy the "shock the conscience" prong of Plaintiffs' substantive due process cause of action, and defeat summary judgment as to Ciambra.  Accordingly, the Court respectfully recommends that Ciambra be denied summary judgment as to this claim.

Notwithstanding the above, Defendants contend that Ciambra should be protected by qualified immunity, but do not offer any evidence to support their affirmative defense.  *See* Def. Mem. at 14-17.  "Under qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Toussie v. Cnty. of Suffolk,* 806 F. Supp. 2d 558, 588 (E.D.N.Y. 2011) (citing *Faghri v. Univ. of Conn.,* 621 F.3d 92, 96 (2d Cir. 2010)).  When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry:  whether the facts shown "make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged

24

conduct." *Taravella v. Town of Wolcott,* 599 F.3d 129, 133 (2d Cir. 2010) (quoting and citing *Pearson,* 555 U.S. at 232, 129 S. Ct. at 816).

Under the Town Code, the Notice of Violation issued to Plaintiffs by Ciambra was required to "contain a description of the premises, which shall include the section, block and lot number, a statement of the particulars in which the building or structure is unsafe or dangerous, and an order requiring the same to be vacated and/or made safe and secure or demolished and removed." *See* Pl. Resp. Ex 2 at 6. The evidence submitted shows that Ciambra failed to comply with these requirements when he issued the April 23, 2012 Notice of Violation. *See* Notice of Violation. In addition to this noncompliance, Ciambra admittedly issued the Notice of Violation *and* signed a subsequent criminal complaint against Plaintiffs, alleging that their retail store had been illegally converted into a restaurant, without having directly observed Plaintiffs prepare, serve, or consume food on the premises, or make any "structural changes" or "enlargements" to the premises. *See* Pl. Resp. Ex. 11A at 39-42. Ciambra also alleged that Plaintiffs' store lacked a legally required certificate of occupancy, despite knowing this requirement was inapplicable, because the building from which Plaintiffs operated was erected prior to 1940. *See id.* at 39-50. Ciambra's noncompliance with the Town Code caused Plaintiffs to be deprived of their clearly established constitutional right to operate the store. Accordingly, the Court respectfully recommends that Ciambra be denied qualified immunity on this

claim, and that Defendants' motion for summary judgment on this alternate basis be denied.[1]

## V.  CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' Motion be:  (a) granted as to Aquiar; and (b) denied as to Ciambra.

## VI.  OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within the specified period waives the right to appeal the District Court's order.  *See Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:       Central Islip, New York
             April 20, 2021

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge

---

[1] Defendants also seek summary judgment against Plaintiffs on their "Arbitrary and Capricious Deprivation of Property" claim, which Judge Bianco has recognized as "similar to the Fourteenth Amendment claims[.]" *See* DE [30] at 6. "In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions." *Brady*, 863 F.2d at 215 (citing *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 267, 97 S. Ct. 555, 564-5 (1977)). The Court is also mindful that "federal courts should not become zoning boards of appeal to review non[-]constitutional land use determinations." *Id.* (quoting *Sullivan v. Town of Salem,* 805 F.2d 81, 82 (2d Cir. 1986)). In light of Judge Bianco's prior Order, the Court similarly recommends granting Defendants' motion for summary judgment on this claim as to Aquiar, but respectfully recommends denying summary judgment as to Ciambra.